Estate of H. Wayne Oakley, Anna C. Pandick Oakley, Executrix, and Anna C. Pandick Oakley v. Commissioner.
Estate of Oakley v. Commissioner
Docket No. 5408-69.
United States Tax Court
T.C. Memo 1972-28; 1972 Tax Ct. Memo LEXIS 226; 31 T.C.M. (CCH) 102; T.C.M. (RIA) 72028; February 7, 1972, Filed Bernard S. Gross, for the petitioners. David B. Spivak, for the respondent. *227 SCOTT Memorandum Opinion SCOTT, Judge: Respondent determined a deficiency in the income tax of petitioners Estate of H. Wayne Oakley, Anna C. Pandick Oakley, Executrix, and Anna C. Pandick Oakley for the taxable year 1965 in the amount of $8,729.95 and determined a deficiency in the income tax of Anna C. Pandick Oakley for the taxable year 1966 in the amount of $5,653.54. The issue for decision is whether petitioners are entitled to a deduction for a loss from a nonbusiness bad debt becoming worthless in the year 1965 and a carryover of a part of the loss to the year 1966 because of advances to Pandick Press, Inc., of which they owned the majority of the stock, becoming worthless in 1965 at the time that corporation was merged with another corporation. All of the facts have been stipulated and are found accordingly. Anna C. Pandick Oakley (hereinafter referred to as Anna), one of the petitioners for the year 1965 and the executrix of the Estate, which is the other petitioner for that year, and the petitioner for the year 1966, was a resident of New York, New York, at the time the petition in this case was filed. A joint United States income tax return for the taxable *228 year 1965 was filed by H. Wayne Oakley (deceased) and Anna and an individual income tax return was filed by Anna for the taxable year 1966. Both of these returns were filed with the district director, Manhattan District, New York. Pandick Press, Inc. (hereinafter referred to as Pandick) was incorporated under the laws of the State of New York on March 3, 1923. Immediately prior to January 8, 1965, the authorized capital stock of Pandick consisted of 2,826 shares of preferred stock, $100 par value and 5,250 shares of common stock, without par value. Immediately prior to January 8, 1965, Anna was the registered owner of 366 shares of preferred and 3,970 shares of common stock of Pandick. Her husband, H. Wayne Oakley (hereinafter referred to as Oakley) was at that time the registered owner of 345 shares of preferred and 600 shares of common stock of Pandick. Prior to January 8, 1965, Anna advanced money to Pandick the balance of which as of January 8, 1965 was $304,297.45. Oakley also advanced money to Pandick the balance of which as of January 8, 1965, was $84,549. These sums were carried as an open account on the books of Pandick. On January 8, 1965 a Plan and Agreement of *229 Merger was entered into by James F. Newcomb Co., Inc. (hereinafter referred to as Newcomb) and Pandick under which Newcomb was merged with and into Pandick. The surviving corporation, Pandick, has continued actively to conduct business. The Plan and Agreement of Merger of January 8, 1965 provided that each 10 shares of common stock of Pandick be converted into 3 shares of $4 Participating Preferred stock and that each share of preferred stock be converted into 1 share of $4 Participating Preferred stock. As a result of this conversion factor Anna was to receive 1,557 shares of the $4 Participating Preferred stock and Oakley was to receive 525 shares of the $4 Participating Preferred stock. The long-term debt of Anna in the amount of $304,297.45 was to be exchanged for 4 percent Non-Negotiable Junior 103 Subordinated Notes in the same principal amount. The long-term debt of Oakley in the amount of $84,549 was to be exchanged for 4 percent Non-Negotiable Junior Subordinated Notes in the same principal amount. On January 8, 1965 a Principal Stockholders' Letter Agreement was concluded in which Anna and Oakley agreed to an audit by Price Waterhouse & Co. as to the accumulated deficit *230 of Pandick as of the effective date of the merger. The opening paragraph of this letter is as follows: In order to induce James F. Newcomb Co., Inc., a Delaware corporation (herein called "Newcomb"), and its stockholders to agree to the Plan and Agreement of Merger, dated as of January 8, 1965 (herein called the "Agreement"), by and between you and Pandick Press, Inc., a New York corporation (herein called "Pandick"), and for further considerations hereinafter stated, the undersigned, A. C. p/andick, owner of approximately 62% of the shares of capital stock of Pandick, and H. Wayne Oakley, owner of approximately 12% of the shares of capital stock of Pandick, hereby agree with, and represent and warrant to, you as follows: The Principal Stockholders' Letter Agreement stated that Anna and Oakley agreed that if the deficit as determined by the Price Waterhouse audit exceed $1,550,000, they would be personally jointly and severally liable to the Surviving Corporation for the full amount by which such accumulated deficit exceeded $1,550,000. The Principal Stockholders' Letter Agreement provided that to the extent that any liability of Anna and Oakley existed under the agreement because *231 of a deficit in excess of $1,550,000 as of January 8, 1965, Anna and Oakley would surrender to the Surviving Corporation 4 percent Non-Negotiable Junior Subordinated Notes equal to the amount of the liability or the total amount of the 4 percent Non-Negotiable Junior Subordinated Notes owned by them, whichever would be less. This Letter Agreement further provided that if any liability should then remain, Anna and Oakley would surrender $4 Participating Preferred stock to satisfy this liability; and, further, that if any liability still remained, then Anna and Oakley would remain personally jointly and severally liable for any remaining liability. Anna and Oakley agreed that the surviving corporation could, for a period not in excess of 120 days from the effective date of the merger hold for their accounts all of the 4 percent Non-Negotiable Junior Subordinated Notes and certificates for shares of $4 Participating Preferred stock of the surviving corporation. They appointed two officers of the surviving corporation, or either of them, as their agent and attorney-in-fact for a period ending 120 days from the effective date of the merger to surrender to them the 4 percent Non-Negotiable *232 Junior Subordinated Notes and shares of the $4 Participating Preferred stock owned by them. On July 31, 1965, Price Waterhouse & Co. submitted a report of their audit of Pandick immediately prior to the merger which contained a computation of accumulated deficit and amount of 4 percent Non-Negotiable Junior Subordinated Notes and $4 Participating Preferred stock to be surrendered in accordance with the Principal Stockholders' Letter Agreement dated January 8, 1965. This computation showed current assets of Pandick of $724,536.34, fixed assets at a cost per books of $980,185.25, accumulated depreciation of $805,131.28 and a net book value of $175,053.97 plus metal of $124,958.61 making a total of fixed assets of $300,012.58 and total assets of $1,024,548.92. This audit showed total current liabilities of $1,601,882.02 and an accumulated deficit of $2,146,323.47. The audit report contained a computation of the accumulated deficit as defined by the Principal Stockholders Agreement which showed the amount to be $2,076,323.47 leaving an excess over the $1,550,000 of $526,323.47 and that all the 4 percent Non-Negotiable Junior Subordinated Notes of both Anna and Oakley were to be surrendered *233 and that Anna would be required to surrender 1,028 of the 1,557 shares of $4 Participating Preferred stock she had received to discharge $102,805.32 of additional deficit and Oakley would be required to surrender 347 of the 525 shares of $4 Participating Preferred stock he had received to discharge the remaining $34,671.70 of that deficit. A letter dated March of 1966 signed by Anna individually and as executrix of the estate of Oakley was sent to the Surviving Corporation acknowledging the requirement of the Principal Stockholders' Letter Agreement and that the principal amount of the 4 percent notes and the number of shares of preferred stock to be surrendered and cancelled were as set forth in the Price Waterhouse audit. This letter of March of 1966 stated in part: The undersigned hereby confirms the actions to be taken by you and your appropriate officers in causing the cancellation of the principal amount of 4% Notes and the shares of Preferred Stock now in your possession designated under the column above headed "To Be 104 Surrendered", in satisfaction, to the extent of the amounts set forth under the heading "Liability Satisfied By Surrender", * * * The undersigned hereby *234 instructs you and you hereby agree upon effecting such cancellation to issue certificates for the shares of Preferred Stock originally issued but not so cancelled, registered in the names and representing the number of shares of Preferred Stock indicated in the following table: Name
Shares
A. C. Pandick
529
A. C. Pandick as Executrix of the Estate of H. Wayne Oakley
178
Anna claimed on Schedule D of her joint return with her deceased husband for the year 1965 a short-term capital loss of $388,846.45 from "Advances Made By Taxpayers to Pandick Press Inc. - now worthless and a non-business bad debt." The claimed net short-term capital loss was used to offset a lesser amount of net long-term capital gain. Respondent, in his notice of deficiency, disallowed the claimed shortterm capital loss of $388,846.45. Anna on Schedule D of her individual Federal income tax return for 1966 claimed a "Short-Term Capital Loss Carryover from 1965" in the amount of $325,815. The claimed amount was used to offset a lesser amount of short-term capital gain, and then a lesser amount of long-term capital gain. Respondent in his notice of deficiency disallowed the claimed short-term *235 capital loss carryover of $325,815. Petitioners contend that Pandick was "hopelessly insolvent" just prior to its merger with Newcomb and that therefore the advances to it by Anna and Oakley were worthless. Petitioners state that: It is well established that a deduction for a bad debt is allowed where the debtor has no assets or in a nominal amount only. State National Bank of El Paso, Texas v. U.S. 39-1 USTC 9471. Other than the case cited in the above quotation, petitioners' brief contains no citation of authority. Section 166 of the Internal Revenue Code of 1954[1] provides for the deduction for bad debts. The provision of section 166(d) relating to nonbusiness bad debts which petitioners contend these advances to Pandick were, concerns only those debts which become "worthless within the taxable year." The bare facts as here stipulated which show that Pandick in 1965 immediately prior to the merger had assets of a book value of $1,024,548.92 and an accumulated deficit of $2,146,323.47 are totally insufficient to show that the debt of Pandick to Anna and Oakley was totally worthless in 1965. "Evidence of insolvency based on book figures *236 does not necessarily establish the owrthlessness of debts." Trinco Industries, Inc., 22 T.C. 959, 965 (1954). *237 Petitioner's total failure of proof of the worthlessness of Pandick's debt to Anna and Oakley in 1965 disposes of petitioners' only contention in support of their position that they are entitled to the claimed worthless debt deduction. However, respondent argues that since the debt of Pandick to Anna and Oakley was exchanged for 4 percent non-negotiable Junior Subordinated Notes when Pandick and Newcomb merged and these notes were used to pay a liability assumed by Anna and Oakley in connection with the merger, the debt did not in fact become worthless or if it did, would result in a loss which would not be recognized under the provisions of sections 354(a)(1), 356(c)(1) and (2) and 358(a)(1) because of being in connection with a reorganization under section 368(a)(1)(A). Petitioner's only answer to this contention of respondent's is the following statement in their reply brief: 105 The format adopted by a Plan and Agreement of Merger entered into by James F. Newcomb Co., Inc. and Pandick Press, Inc. (Joint Exhibit 3-C) was merely a vehicle selected by the participants to establish a tax-free reorganization under the provisions of Section 368(a)(1)(A) of the Internal Revenue Code *238 . However, there is nothing in the vehicle used to controvert the fact that the old Pandick Press, Inc. was hopelessly insolvent and Petitioners' loans were worthless prior to the merger. This argument of petitioners' overlooks the fact that the exchange of loans for the 4 percent notes was a part of the notes agreement and that the use of the notes was to discharge an obligation taken on by Anna and Oakley to induce Newcomb to agree to the merger. The principal stockholders agreement was an integral part of the merger agreement. The use of the 4 percent notes received in exchange for the advances to Pandick was capital in nature and increased the investment by Anna and Oakley in the new Pandick which resulted from the merger. See Estate of McGlothlin v. Commissioner, 370 F. 2d 729 (C.A. 5, 1967) affirming 44 T.C. 611 (1965). Respondent's final argument is that until Anna agreed that the audit by Price Waterhouse was correct in showing that all the 4 percent notes issued to her and Oakley were to be surrendered in accordance with the obligation they assumed in the principal stockholders agreement there was no final disposition of her 4 percent notes. Since *239 Anna did not authorize and confirm the cancellation of the 4 percent notes until her letter of March of 1966, respondent contends that it was not until that date that the 4 percent notes were used in discharge of the obligation under the stockholders agreement. Respondent's primary argument is that the cancellation of these notes in 1966 was an integral part of the merger of Newcomb and Pandick. Respondent states, however, that in any event the cancellation of the 4 percent notes in 1966 is, under the rationale of our holding in J. Meredith Siple, 54 T.C. 1 (1970), part of the acquisition cost of the preferred stock that Anna and the Estate of Oakley retained. While the factual situation in J. Meredith Siple, supra, and the instant case is quite different, both cases involved payments made as a result of an investment in a corporation. In the Siple case the payments in a later year resulted from an undertaking given in a prior year "at the time and as a condition" of an investment in a corporation. In the instant case the cancellation of the 4 percent notes was as a result of an undertaking given in 1965 to induce a merger of another corporation into the *240 corporation in which petitioners owned the majority stock with petitioners to receive stock in the merged corporation. We, therefore, agree with respondent that under the rationale of J. Meredith Siple, supra, the cancellation of the 4 percent notes in 1966 in substance resulted in an additional cost of petitioner's stock in the merged corporation. Decision will be entered for respondent. Footnotes
1. SEC. 166. BAD DEBTS. (a) General Rule. - (1) Wholly worthless debts. - There shall be allowed as a deduction any debt which becomes worthless within the taxable year. (2) Partially worthless debts. - When satisfied that a debt is recoverable only in part, the Secretary or his delegate may allow such debt, in an amount not in excess of the part charged off within the taxable year, as a deduction. * * * (d) Nonbusiness Debts. - (1) General rule. - In the case of a taxpayer other than a corporation - (A) subsections (a) and (c) shall not apply to any nonbusiness debt; and (B) where any nonbusiness debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 6 months. (2) Nonbusiness debt defined. - For purposes of paragraph (1), the term "nonbusiness debt" means a debt other than - (A) a debt created or acquired (as the case may be) in connection with a trade or business of the taxpayer; or (B) a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business.↩